HONORABLE DAVID G. ESTUDILLO

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| GERARDO BAEZ GARCIA, LUKE LOPEZ, and ROWDY PAYNE, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CALIBER CONCRETE CONSTRUCTION, INC., a Washington for profit Corporation in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 3:26-cv-06146-DGE<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>NOTE ON MOTION CALENDAR: NOVEMBER 30, 2026 |

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Caliber Concrete Construction, Inc. ("Caliber") in its Second Motion to Dismiss ("Motion") asks this Court to dismiss Plaintiffs' meal break claims (Claim 3) and all purportedly "related" wage claims (Claims 1, 4, and 5), which Defendant argues are "completely preempted" under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Dkt. 12 at 1. Defendant also asks the Court to dismiss Plaintiffs' rest break claims (Claim 2) based on a misconception that the claim arises solely under Washington's Industrial Safety and



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Health Act ("WISHA"). Notably, Caliber's Motion does not seek to dismiss or otherwise challenge Plaintiff Payne's statutory retaliation claim under the Equal Pay and Opportunities Act (Claim 6), which necessarily survives this Motion intact.

Caliber's sweeping construction of the LMRA's preemptive power to dismiss four of Plaintiffs' state law claims misconstrues controlling Ninth Circuit preemption authority, Washington's "construction worker exemption," and the off-the-clock work allegations pleaded in Plaintiffs' First Amended Complaint ("FAC"). As an initial matter, Plaintiffs' meal period claims are not preempted under Section 301 of the LMRA because the collective bargaining agreement ("CBA") at issue fails to address both meal *and* rest breaks, as is required for the construction worker exemption to apply and the CBA to "supersede" Plaintiffs' state law claims. Nor do Plaintiffs' distinct claims for unpaid wages, overtime, or willful withholding, which primarily stem from their off-the-clock work, "derive" from Plaintiffs' meal period claims, as such statutory wage claims constitute non-negotiable state-law rights that Caliber has failed to show are otherwise "inextricably intertwined" with the terms of the CBA under the test the Ninth Circuit articulated in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Finally, Caliber's attempt to dismiss Plaintiffs' rest break claims because they reference WAC 296-62-09547's high-heat regulations also fails, as Plaintiffs do not assert a standalone cause of action or seek an independent remedy under that statute, but rather RCW 49.52.050 and RCW 49.52.070 supply the civil remedy for Caliber's denial of paid rest breaks and cool down periods.

For the reasons that follow, Caliber's motion should be denied.

## II. BACKGROUND

### A. Factual Background.

Plaintiffs Gerardo Baez Garcia, Luke Lopez, and Rowdy Payne (collectively "Plaintiffs")



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

are former hourly-paid, non-exempt employees of Caliber who were victimized by Caliber's unlawful compensation and time-keeping practices. Caliber employed Baez Garcia as a concrete mason, whose primary duties included pouring concrete, curb and gutter work, constructing accessibility ramps, and loading heavy construction materials, from approximately June 2023 through February 2026. FAC, Dkt. 9 ¶ 3.1; Declaration of Gerardo Baez Garcia ¶ 5 ("*Garcia Decl.*"). Lopez also worked as a concrete mason with Caliber, whose duties included building concrete forms and pouring concrete, from approximately August 2023 through May 2025. FAC, Dkt. 9 ¶ 3.2; Declaration of Luke Lopez ¶¶ 4, 8 (*"Lopez Decl.")*. Finally, Caliber employed Payne as a lead-finisher, whose duties included building concrete forms, pouring concrete, and overseeing concrete projects, between approximately March 2018 through December 2024. FAC, Dkt. 9 ¶ 3.3; Declaration of Rowdy Payne ¶¶ 4, 8, 32–34 (*"Payne Decl.")*.

Plaintiffs were all members of Western Washington's Cement Masons Local 528. The union entered into a CBA with Caliber, which provided for meal periods under Article 9, but did not expressly provide for or otherwise address rest breaks. Plaintiffs' minimum wage, rest break, meal period, overtime, and willful wage withholding claims do not arise from a breach of the union's CBA, but rather stem only from Caliber's failure to honor the minimum statutory rights guaranteed to workers under Washington State law.

**1. Claim 1: Failure to Pay Minimum Wage for Off-the-Clock Work.**

Plaintiffs' first claim for relief alleges that Defendants failed to pay Plaintiffs at least minimum wage for all hours worked in violation of Washington's Minimum Wage Act ("MWA"). FAC, Dkt. 9 ¶ 5.1. Specifically, Defendant required Plaintiffs and class members to complete several hours of off-the-clock work each day, including both pre-shift tasks before their workdays were scheduled to begin and post-shift tasks after their workdays were scheduled to



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

conclude. From the start of each Plaintiff's employment, Caliber required employees to report daily to their jobsites between 4:30 – 5:30 a.m. to clean company trucks, prepare materials and concrete forms for the day, and to load the trucks with these materials. FAC, Dkt. 9 ¶ 5.3; *Garcia Decl.* ¶¶ 8–11; *Lopez Decl.* ¶¶ 6–8; *Payne Decl.* ¶¶ 6–8. Upon completing their duties at the jobsite each day, Caliber required Plaintiffs to drive company trucks back to Caliber's Pacific, Washington shop, where they then had to discard any remaining junk from the day, return their keys, and sign out. FAC, Dkt. 9 ¶ 5.4; *Garcia Decl.* ¶¶ 13–15; *Lopez Decl.* ¶¶ 9–11; *Payne Decl.* ¶¶ 9–11.

Despite this pre-shift and post-shift work, Caliber instructed its foremen to record only the Plaintiffs' designated shift times of 7:00 a.m. to 3:00 p.m., regardless of any additional hours they worked. FAC, Dkt. 9 ¶ 5.5. Plaintiffs allege these pre-shift and post-shift requirements extended their workweeks by at least ten to fourteen hours each week, and that although Caliber's pay records reflect an average of 38 hours per workweek, properly documented hours would have reflected an average of roughly 48 hours per workweek, including approximately eight hours of omitted overtime pay each week. FAC, Dkt. 9 ¶ 5.6; *Garcia Decl.* ¶ 16; *Lopez Decl.* ¶ 12; *Payne Decl.* ¶ 12.

**2. Claim 2: Denial of Rest Breaks and Cool-Down Periods.**

Plaintiffs' second claim for relief alleges that Defendants systematically denied Plaintiffs and class members the rest breaks to which they were entitled under RCW 49.12.020 and WAC 296-126-092. FAC, Dkt. 9 ¶¶ 5.23–5.31. Caliber routinely required Plaintiffs and class members to work straight through their mandatory 10-minute rest breaks for every four hours worked. FAC, Dkt. 9 ¶ 5.25; *Garcia Decl.* ¶¶ 19, 23; *Lopez Decl.* ¶¶ 16–17; *Payne Decl.* ¶¶ 15–16. Even when Caliber permitted Plaintiffs and class members to take rest breaks, foremen frequently



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

interrupted them to tend to the concrete pour, rendering the breaks legally non-compliant. FAC, Dkt. 9 ¶ 5.26.

In addition, during periods of extreme temperature in the summer months, Caliber routinely failed to provide Plaintiffs and class members with mandatory preventative cool-down rest breaks and shade that Washington safety standards (WAC 296-62-09547) mandate. FAC, Dkt. 9 ¶ 5.28. Caliber's foremen actively discouraged crew members from taking preventative rest breaks in shaded areas, forcing Plaintiffs and class members to endure hazardous high-heat conditions without rest breaks or adequate cool-down time. FAC, Dkt. 9 ¶ 5.28; *Garcia Decl.* ¶ 21; *Lopez Decl.* ¶¶ 17–22; *Payne Decl.* ¶¶ 18–20.

**3. Claim 3: Failure to Provide Timely and Duty-Free Meal Periods.**

Plaintiffs' third claim for relief alleges that Caliber systematically deprived Plaintiffs and putative class members of timely, uninterrupted 30-minute meal periods mandated by RCW 49.12.020 and WAC 296-126-092. FAC, Dkt. 9 ¶¶ 5.32–5.39. Caliber routinely required Plaintiffs and class members to work well beyond five consecutive hours without a meal break and often forced them to eat while actively working on pouring concrete or monitoring curing slabs. FAC, Dkt. 9 ¶ 5.34; *Lopez Decl.* ¶¶ 24–25; *Garcia Decl.* ¶¶ 24–27; *Payne Decl.* ¶¶ 22–23. Caliber maintained no scheduling mechanism or timekeeping policy to ensure employees received duty-free meal periods, and Caliber systematically failed to pay Plaintiffs and class members for these missed meal periods. FAC, Dkt. 9 ¶ 5.36.

**4. Claim 4: Failure to Pay Overtime Wages.**

Plaintiffs' fourth claim for relief alleges that Defendants failed to pay Plaintiffs overtime wages for all hours worked in excess of 40 hours per week, also in violation of the MWA. FAC, Dkt. 9 ¶¶ 5.40–5.47. Specifically, Plaintiffs contend that Defendants failed to pay them overtime



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

wages for those weeks in which their uncompensated off-the-clock work extended the workweek beyond 40 hours. FAC, Dkt. 9 ¶ 5.18; *Garcia Decl*. ¶¶ 17–18; *Lopez Decl*. ¶¶ 13–14; *Payne Decl*. ¶¶ 13–15. Separately, Plaintiffs allege they are entitled to overtime wages for those weeks in which their missed meal and rest breaks extended the work week beyond 40 hours. FAC, Dkt. 9 ¶ 5.19.

**5. Claim 5: Willful Wage Withholding.**

Plaintiffs' fifth claim for relief alleges that Caliber willfully, knowingly, and intentionally withheld wages Caliber rightfully owed to Plaintiffs and class members in violation of Washington's Wage Rebate Act, RCW 49.52.050 and RCW 49.52.070. FAC, Dkt. 9 ¶¶ 5.40–5.47. Caliber possessed direct knowledge that Plaintiffs and class members were performing substantial uncompensated off-the-clock work prior to their recorded shift times of 7:00 a.m. and after 3:00 p.m. each day, yet it instructed foremen to artificially restrict their recorded hours. FAC, Dkt. 9 ¶ 5.5; *Payne Decl*. ¶¶ 15, 26. Moreover, Caliber maintained a policy or practice of retaliating against those employees who questioned its unlawful wage practices, further evidencing that Caliber's refusal to pay Plaintiffs and class members for all hours, including significant off-the-clock work and overtime wages, was arbitrary and intentional, and that no *bona fide* legal dispute excuses Caliber's conduct. FAC, Dkt. 9 ¶¶ 5.16, 7.1–7.4. As such, Caliber's withholding of wages owed to Plaintiffs and class members was willful as a matter of law, entitling them to exemplary double damages, statutory interest, and reasonable attorneys' fees under RCW 49.52.070. FAC, Dkt. 9 ¶¶ 5.45–5.47.

**6. Claim 6: Retaliation Against Plaintiff Payne.**

Claim 6 of the FAC alleges that Caliber unlawfully retaliated against Plaintiff Rowdy Payne in violation of Washington's Equal Pay and Opportunities Act ("EPOA"). FAC, Dkt. 9 ¶¶



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

5.48–5.58. In fall 2024, Payne formally complained to Caliber's management and field foremen concerning Caliber's unlawful timekeeping practices—specifically protesting the common practice of forcing crew members to perform unpaid off-the-clock work prior to 7:00 a.m. and after 3:00 p.m., and challenging Caliber's failure to provide rest and heat-relief breaks for his crew. FAC, Dkt. 9 ¶ 5.50; *Payne Decl*. ¶¶ 25–26.

In response to Payne's protected opposition of Caliber's unlawful compensation practices, Caliber retaliated against Payne by forcing him to drive his personal vehicle between job sites (instead of a company truck) and significantly reduced his scheduled hours, forcing Payne to leave his job with Caliber in December 2024. FAC, Dkt. 9 ¶¶ 5.52–5.55; *Payne Decl*. ¶¶ 27–34. Defendant does not seek to dismiss this claim.

**B. Procedural History.**

Plaintiff Gerardo Baez Garcia initiated this putative class action against Caliber Concrete Construction and Doe Defendants 1 through 100 on August 18, 2026. Although originally filed in Pierce County Superior Court, on September 21, 2026, Caliber removed the action to this Court. Dkt. 1. Caliber grounded its removal on federal jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185, alleging that the terms and conditions of Plaintiffs' employment were governed by a CBA executed between Caliber and Western Washington's Cement Masons Local 528. Dkt. 1.

On September 28, 2026, Defendant filed its initial Motion to Dismiss. Dkt. 7. On October 19, 2026, Plaintiffs timely filed the operative FAC, again alleging violations of the MWA for unpaid off-the-clock and overtime work, failure to provide meal and rest breaks in violation of Washington's Industrial Insurance Act, and willful wage withholding under Washington's Wage Rebate Act. Dkt. 9. The FAC also joined two additional Plaintiffs, Luke Lopez and Rowdy



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Payne, and alleged new violations under Washington's EPOA on Payne's behalf.

On November 2, 2026, Defendant filed its Second Motion to Dismiss for Failure to State a Claim. Dkt. 12. Caliber argues that Plaintiffs' meal period claims are completely preempted by LMRA § 301, and that Plaintiffs' separate minimum wage, overtime, and wage withholding claims are "derivative" of their meal period claims, and therefore also preempted. Defendant also argues that Plaintiffs' rest break claims, which reference heat regulations under WISHA, lack a private right of action, therefore mandating that all of Plaintiffs' claims be dismissed with prejudice. Dkt. 12 at 11.

## III. LEGAL STANDARD

### A. Failure to State a Claim for Relief under Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must merely allege sufficient nonconclusory facts, accepted as true, to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Courts must accept as true all well-pleaded allegations of material fact and draw all reasonable inferences in favor of the Plaintiff. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

Removal to federal court generally requires that a federal claim appear on the face of a plaintiff's "well-pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). An exception to the "well-pleaded complaint rule" is the "complete preemption doctrine," which may apply where a party has shown that an otherwise well-pleaded state law claim is "completely preempted by [Section 301 of] the LMRA." *Dahl v. Rosenfeld*, 316 F.3d 1074, 1077



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

(9th Cir. 2003).

**B. LMRA.**

In general, courts will find that an otherwise independently plead state law claim is completely preempted under the LMRA where such claim is "inextricably intertwined" with the terms of a CBA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). To evaluate whether a state law claim is completely preempted under Section 301, courts in the Ninth Circuit apply the established two-step framework articulated in *Burnside*, 491 F.3d at 1059–60. At Step one, the court evaluates the "legal character" of the claim by asking whether the asserted right is grounded in, or exists solely because of, the collective bargaining agreement. *Id.* at 1060. If a claim is based on a right or duty created by a CBA, it is preempted. *Id.* at 1059. If, however, the claim arises from an independent statutory right conferred by state law, courts proceed to Step two of the analysis. At Step two, the court determines whether resolving the independent state law claim substantially depends on the terms of the collective bargaining agreement, which depends on whether the claim can be resolved by a court "simply looking" to the agreement, or whether it instead requires a direct interpretation of the CBA's terms. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153 (9th Cir. 2019).

Courts in this Circuit have long-recognized that claims are not preempted under Section 301 where they "just refer to a CBA defined-right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (*en banc*) (internal citations omitted). As detailed below, because the "construction industry exception" is inapplicable here, Section 301's "complete preemptive" power does not overcome Plaintiffs' independent state law meal period claims, or Plaintiffs' other wage and hour claims, which do not substantially depend on or



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

require interpretation of the CBA.

## IV. ARGUMENT

### A. The CBA at Issue Does Not Fall Under the Construction Industry Exemption, Defeating Defendant's Preemption and Exhaustion Arguments.

As Defendant recognizes, Washington State Law provides for mandatory meal periods (and rest breaks) under the Industrial Welfare Act (RCW 49.12 et seq.) and WAC 296-126-092. Defendant argues, however, that the CBA "supersedes" these statutory rights under the so-called "construction industry exemption," codified at RCW 49.12.187(1). This provision states in relevant part:

> [R]ules adopted under this chapter regarding appropriate **rest <u>and</u> meal periods** as applied to employees in the construction trades may be superseded by a collective bargaining agreement negotiated under the national labor relations act, 29 U.S.C. Sec. 151 et seq., **<u>if</u> the terms of the collective bargaining agreement covering such employees specifically require rest <u>and</u> meal periods and prescribe requirements concerning those rest <u>and</u> meal periods**.

Because the exemption explicitly requires a CBA to specifically address both rest *and* meal periods to supersede Plaintiffs' state law rights, Caliber's failure to address rest breaks in its CBA is fatal to its defense. Plaintiffs' meal break claims remain completely outside the scope of the labor agreement, rendering the CBA's grievance and exhaustion procedures entirely inapplicable.

#### 1. The Plain Language of RCW 49.12.187 is Strictly Conjunctive and Only Applies If a CBA Specifically Requires Both "Rest *and* Meal Periods."

Defendant's argument that the CBA at issue entitles them to escape the mandate of state workplace safety law because the CBA prescribes meal period requirements is meritless, as it ignores the clearly conjunctive language of the exemption: "rest **<u>and</u>** meal periods." *See State v.*



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

*Yusuf,* 512 P.3d 915, 920 (Wash. Ct. App. 2022) ("We read 'and' disjunctively only when the legislature clearly intended to do so.").

Indeed, this Court has previously rejected the very defense Defendant now asserts. In *Cheney v. Puget Sound Energy, Inc.*, 2023 U.S. Dist. LEXIS 149355 (W.D. Wash. Aug. 24, 2023), Judge Settle considered a construction industry CBA that, like this one, only addressed meal breaks and did not separately address rest breaks. The Court noted the conjunctive language of RCW 49.12.187 "indicates that a CBA must address *both* rest *and* meal periods to supersede state law regarding such periods." *Id.* at *8 (emphasis in original). In reaching this conclusion, the Court noted that the Legislature knows how to communicate disjunctive intent; after all, the statutory subsection following the construction industry exemption, dealing with CBAs for public employees, notes that such CBAs may '"vary from or supersede, *in part or in total*, rules adopted by this chapter regarding appropriate rest *and* meal periods,'" and that the "statute contains no similar language in the section concerning employees in the construction trades." *Id.* at *7–9 (quoting RCW 49.12.187(2)) (emphasis in original). The Court went on to note that "where the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional." *Id.* at *9 (quoting *Perez-Crisantos v. State Farm Fire & Cas. Co.*, 389 P.3d 476, 481 (Wash. 2017)) (cleaned up). This is particularly true here, as the construction industry exemption was adopted nearly contemporaneously with the amendment regarding public employees. *See* S.S.B. 5995, 58th Leg., 2003 Reg. Sess. (Wash. 2003) (law amending RCW 49.12.187 to include the construction industry exemption, passed on April 22, 2003) and S.S.B. 6054, 58th Leg., 2003 Reg. Sess. (Wash. 2003) (law amending RCW 49.12.187 to include the public employer exception, passed on April 25, 2003). The plain language of the statute could not be more clear: to fall under the construction industry exemption, the collective



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

bargaining agreement must address *both* meal *and* rest periods. The CBA at issue here fails to do so.

**2. Contemporaneous Legislative History and Administrative Policy Confirm the Legislature's Strict Conjunctive Intent.**

The legislative reports support the conjunctive reading of the statutory exception. The final amendment report from the Washington State House, adopted six days before passage of the bill, and addressing the very version that was ultimately passed, contains the following explanation of the effect of the final bill language from the Committee on Commerce & Labor:

> Under the amendment, the bill applies to all construction workers, not just those working with hot asphalt or other materials or processes that would not allow scheduled breaks, **but only if**: (1) the collective bargaining agreement has been negotiated under the National Labor Relations Act; and (2) **the agreement specifically requires rest and meal periods**. Makes various technical changes, including allowing agency rules to be "superseded" by a collective bargaining agreement instead of being "modified" by the agreement.

S.S.B. 5995, 58th Leg., 2003 Reg. Sess. (Wash. 2003) (As amended by House, Apr. 16, 2003) (emphasis added).[1]

Further, the Washington Department of Labor and Industries (L&I), the administrative agency tasked with implementing and enforcing the Industrial Welfare Act, explicitly mirrors this conjunctive reading in its official policy guidelines. L&I's administrative policy implementing the construction trade exemption dictates that to supersede state regulations, "[t]he terms of the CBA covering such employees must specifically require rest **and** meal periods and set forth the conditions for the rest **and** meal periods." Wash. Dep't of Lab. & Indus., Admin.

---

[1]Available at: https://lawfilesext.leg.wa.gov/biennium/2003-04/Pdf/Amendments/House/5995-S%20AMH%20CL%20CORD%2057.pdf



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Policy No. ES.C.6.1, *Meal and Rest Periods for Nonagricultural Workers Age 18 and Over*, at 2 (Dec. 1, 2017) (emphasis added). Washington courts accord substantial weight to L&I's interpretations of the statutes and regulations it administers. *See Carranza v. Dovex Fruit Co.*, 416 P.3d 1205, 1219 (Wash. 2018) ("[U]nder Washington law, deference is owed to an agency's interpretation of a state statute if the law being interpreted is within [that] agency's expertise.") (citation and internal quotation marks omitted).

### 3. Defendant's Primary Authority, *Sellen*, Explicitly Precludes Preemption and Exhaustion Where a CBA Fails the Conjunctive Threshold.

Defendant relies extensively on *Bruce v. Sellen Constr. Co.*, No. 2:25-cv-00705-JHC, 2025 U.S. Dist. LEXIS 169199 (W.D. Wash. Aug. 29, 2025) to argue that exhaustion of the grievance process is mandatory, but Defendant's myopic reliance on *Sellen* is a self-inflicted blow. Rather than supporting preemption, an earlier decision in *Sellen* explicitly reinforces the conjunctive rule established in *Cheney* and confirms that preemption is unavailable where a CBA fails to address both rest *and* meal breaks. Indeed, the *Sellen* court explicitly carved out agreements that fail *Cheney*'s conjunctive threshold, explaining:

> [C]ourts in this District reject Section 301 preemption … when, for example, the applicable CBA does not fall within RCW 49.12.187's exception, and so the plaintiff's rights were not independent of state law under the LMRA. *See Cheney v. Puget Sound Energy, Inc.*, 2023 U.S. Dist. LEXIS 149355, 2023 WL 5445730, at *3–4 (W.D. Wash. Aug. 24, 2023) (RCW 49.12.187 inapplicable since CBA at issue did not address *both* rest and meal breaks).

*Bruce v. Sellen Constr. Co.*, No. 2:25-cv-00705-JHC, 2025 U.S. Dist. LEXIS 157861, at *6 (W.D. Wash. Aug. 14, 2025) (citation and parenthetical in original). Because the CBA here lacks any rest break provisions, it falls squarely into the class of construction trade CBAs that both *Cheney* and *Sellen* declare outside the scope of the RCW 49.12.187 exception. Thus, the statutory exemption



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

does not apply, the LMRA does not preempt Plaintiffs' state-law meal period claims, and Plaintiffs had absolutely no obligation to exhaust contractual grievance remedies before seeking judicial relief. The Court should deny Defendant's motion to dismiss Claim 3.

**B. Plaintiffs' Minimum Wage, Overtime, and Wage-Withholding Claims are Distinct Statutory Rights, not Subject to LMRA Preemption.**

Caliber argues the Court should dismiss Plaintiffs' other state law causes of action—specifically Claim 1 (Payment of Wages Less Than Entitled), Claim 4 (Failure to Pay Overtime Wages), and Claim 5 (Willful Refusal to Pay Wages) only "to the extent they are derived from" Plaintiffs' meal break claims, and therefore also preempted. Dkt. 12 at 10. This argument fails instantly because, as previously explained, Plaintiffs' meal period claims are not preempted under Section 301 of the LMRA since the construction industry exception does not apply here. In addition, even if Plaintiffs' meal period claims were preempted, dismissal of Plaintiffs' remaining wage claims would be improper because (1) these claims do not "derive" from Plaintiffs' meal period claims, and (2) no independent basis exists to preempt them, as the MWA and Wage Rebate Act confer nonnegotiable statutory rights that cannot be bypassed by a collective bargaining agreement.

In Washington, "[p]reemption *is the exception*, not the rule. . . ." *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 113 (Wash. 2004) (emphasis added). Recognizing the strong public policy against depriving unionized employees of state statutory rights that would undeniably be available to nonunion employees, Washington courts have long held that Section 301 does not preempt those "nonnegotiable rights" conferred to employees by the MWA. *Id.* at 115 (internal citation and quotation omitted); *Livadas v. Bradshaw,* 512 U.S. 107, 129 (1994) (discussing policy against preventing union members from enjoying the same minimum labor



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

rights available to nonunion employees). The right to receive proper compensation for all hours worked, including overtime and straight-time wages for off-the-clock work, constitutes an unwaivable, "nonnegotiable" state right. *Schneider v. Snyder's Foods, Inc.*, 976 P.2d 134, 137 (Wash. Ct. App. 1999).

**1. Plaintiffs' state law claims do not "derive" from their meal period claims.**

Caliber's argument that Plaintiffs' minimum wage, overtime, and wage withholding claims are preempted because they "derive" from Plaintiffs' meal break claims mischaracterizes the FAC. Unlike in *Sellen Construction* and *Eloph*, where the plaintiffs pleaded no independent off-the-clock work and sought overtime and minimum wages solely resulting from their missed meal and rest breaks, Plaintiffs here plead specific, non-break related off-the-clock work based on the pre-shift and post-shift labor Caliber required them to perform but did not record or pay. *See Sellen Constr. Co.*, 2025 U.S. Dist. LEXIS 169199, at *10 (preemption applied because the plaintiff sought only those wages left unpaid due to denied breaks); *Eloph v. Hos Bros. Constr., Inc.*, No. C25-2491-KKE, 2026 U.S. Dist. LEXIS 387196, at *10 (W.D. Wash. July 28, 2026) (same).

Here, the core of Plaintiffs' claims rest on Caliber's systemic failure to pay them for the 2-3 hours of mandated pre-shift and post-shift off-the-clock work performed daily. FAC, Dkt. 9 ¶¶ 5.4–5.6. While Plaintiffs also allege that missed meal breaks separately contributed to uncompensated overtime (FAC, Dkt. 9 ¶¶ 5.18, 11.3), Plaintiffs' off-the-clock work allegations provide an independent basis for their minimum wage, overtime, and wage withholding claims. FAC, Dkt. 9 ¶¶ 5.4–5.6. Therefore, regardless of how the Court rules on the potential preemption of any meal break-based overtime pay, the overtime allegations stemming from Plaintiffs' uncompensated off-the-clock work remain fully viable and must survive the instant motion.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Indeed, the cases Caliber cites in its Motion actually *support* Plaintiffs' position. For example, in *Vesikuru v. Lease Crutcher Lewis WA, LLC*, the court refused to dismiss the plaintiffs' off-the-clock work claims, holding that those "claims survive preemption—and dismissal—to the extent that they concern other off-the-clock time, such as hours worked before and after shifts." No. 3:25-cv-06145-TMC, 2026 U.S. Dist. LEXIS 186628, at *13 (W.D. Wash. Aug. 19, 2026). This is because Washington's construction industry exemption under RCW 49.12.187 has no legal bearing on MWA standards governing compensation for hours worked. *See Horton v. Americool Heating & A/C LLC*, No. 2:22-cv-01838-BJR, 2023 U.S. Dist. LEXIS 75553, at *11 (W.D. Wash. May 1, 2023).

Because Plaintiffs' off-the-clock work and overtime claims rely on a separate factual basis than their meal period claims, Caliber's derivative preemption argument fails as a matter of law. Tellingly, Caliber's own Proposed Order seeks dismissal of Claims 1, 4, and 5 only "to the extent they are based on . . . the alleged failure to provide meal periods" (Dkt. 12-1 at 2)—leaving Plaintiffs' pre- and post-shift allegations untouched by Defendant's own proposed relief.

**2. Defendants assert no other basis for preempting Plaintiffs' independent and non-negotiable state law claims.**

Caliber has likewise failed to establish that Plaintiffs' independent state law claims are preempted under either Step one or Step two of the controlling *Burnside* framework. First, under Step one, Plaintiffs seek solely to vindicate non-negotiable rights conferred by Washington Statute. The FAC specifically alleges that Defendants failed to pay Plaintiffs the wages to which they were entitled under the MWA (RCW 49.46.020, .130) and willfully withheld those wages under the Wage Rebate Act (RCW 49.52.050, .070) by requiring extensive off-the-clock work before 7:00 a.m. and after 3:00 p.m. FAC, Dkt. 9 ¶¶ 5.4–5.6. Because the right to be paid for all



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

hours worked is a wholly independent right conferred by Washington statute and cannot be waived, Plaintiffs' claims readily satisfy Step one. *See Burnside*, 491 F.3d at 1059; *Schneider v. Snyder's Foods, Inc.*, 976 P.2d 134, 136 (Wash. Ct. App. 1999); *Ervin v. Columbia Distrib., Inc.*, 930 P.2d 947, 952 (Wash. Ct. App. 1997) (holding statutory wage claims under RCW 49.46 and RCW 49.52 are nonnegotiable and not preempted).

Second, under Step two, Plaintiffs' claims are not "substantially dependent" upon any collective bargaining agreement. Preemption at Step two requires an "active dispute over the meaning of contract terms." *Alaska Airlines,* 898 F.3d at 921 (internal quotation and citation omitted). Neither Plaintiffs nor Caliber have identified any dispute over the meaning of any CBA provision. Indeed, whether Caliber required Plaintiffs and class members to engage in off-the-clock work, and instructed foremen to falsify time records, is a "purely factual inquiry" regarding Caliber's conduct and recordkeeping—not a contractual dispute over CBA terms. Furthermore, any potential need to reference hourly rates in the CBA in order to calculate back pay or overtime damages does not trigger preemption under Section 301. As the United States Supreme Court has made clear, "the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301." *Livadas*, 512 U.S. at 125; *see also Burnside*, 491 F.3d at 1073–74 n.19. Because calculating what Caliber owes Plaintiffs and class members for their unrecorded work requires only a simple mathematical application of these rates to the hours worked, the claims remain entirely independent of the CBA.

Since Plaintiffs do not seek to enforce or recover damages under the terms of the CBA, nor assert claims requiring the Court to interpret any provision contained in the collective bargaining agreement, Caliber has, at most, "alleg[ed] a hypothetical connection between the



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

claim[s] and the terms of the CBA," which "is not enough to preempt the claim[s]." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 686, 691–92 (9th Cir. 2001) (*en banc*); *see also Troupe v. KLB Constr., Inc.*, No. C10-0599-JCC, 2010 U.S. Dist. LEXIS 154837, at *10 (W.D. Wash. July 7, 2010) (remanding nonnegotiable statutory claims not governed by the CBA).

In sum, because Plaintiffs' statutory right exists independently of any collective bargaining agreement and can be resolved without interpreting the CBA's terms, their claims are not preempted under Section 301. To hold otherwise would allow employers to use the mere existence of a CBA as a shield against non-negotiable statutory obligations to pay employees for all hours worked. Accordingly, this Court should reject Caliber's preemption arguments and deny its Motion to Dismiss Claims 1, 4, and 5.

### C. Plaintiffs do not assert an independent cause of action or seek any remedy under WAC 296-62-09547.

Caliber frames Plaintiffs' second claim for relief as an attempt to bring a direct private action under Washington's high-heat safety regulation (WAC 296-62-09547), arguing that because WISHA delegates enforcement authority exclusively to the Department of Labor and Industries, the claim must be dismissed. Dkt. 12 at 12. This argument mischaracterizes the FAC.

Plaintiffs do not assert a standalone cause of action—or seek any freestanding remedy—under WAC 296-62-09547. Instead, Plaintiffs assert statutory rest break claims under the Industrial Welfare Act (RCW 49.12 et seq.) and WAC 296-126-092, and reference the high-heat regulation in relation to the standard for *when* and under what circumstances they were entitled to be paid compensable rest periods under the Wage Rebate Act (RCW 49.52 et seq.). FAC, Dkt. 9 ¶¶ 5.12-5.13, 9.6.

The FAC alleges that Caliber forced Plaintiffs to forgo rest breaks, including but not



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

limited to cool-down periods, while attending to molten concrete in temperatures exceeding 100 degrees, and directed employees to continue working through the heat even after they exhibited heat-related symptoms. FAC, Dkt. 9 ¶¶ 5.12-5.14. Under Washington's high-heat rule, an employer must provide mandatory cool-down rest periods when the temperature is at or above 90 degrees Fahrenheit, and those periods must be paid. WAC 296-62-09547 (separate from the paid rest breaks mandated under RCW 49.12.020 and WAC 296-126-092).

Washington law has long recognized that denying a legally mandated paid rest break is not merely a condition-of-labor violation under RCW 49.12 et seq.; it is also a compensable wage violation. In *Wingert v. Yellow Freight Sys., Inc.*, the Washington Supreme Court held that employees required to work through a paid rest break mandated by regulation could recover wages for the additional labor they performed. 50 P.3d 256, 260 (Wash. 2002). The Supreme Court recognized a private wage remedy under RCW 49.12 even though the legislature expressly assigned enforcement of that chapter to L&I's director under RCW 49.12.033. *Id.* at 261.

The same reasoning applies here. WAC 296-62-09547(1) requires employers to provide mandatory cool-down periods and expressly requires payment for those periods unless they coincide with another otherwise unpaid meal or rest period. By requiring Plaintiffs to continue working through their mandated rest breaks and periods of high heat without additional compensation, Defendant withheld wages for the labor Plaintiffs performed during the time that Washington State regulations required it to pay Plaintiffs to rest. Plaintiffs seek the wages attributable to that additional labor. L&I's authority to cite the high-heat safety violation and order abatement coexists with such wage remedy, as employees who have their rest break rights violated, whether as part of such a safety violation or not, remain entitled to recover for such unpaid time through the wage-withholding remedies prescribed under RCW 49.52.070.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

Taken together, WAC 296-62-09547 establishes when Plaintiffs are entitled to mandatory paid cool-down rest periods (in addition to other paid rest breaks), and RCW 49.52.050 and RCW 49.52.070 supply the civil remedy for Caliber's denial of those cool-down periods. Plaintiffs' rest break claims rely on these remedial statutes—not on any implied right of action within the high-heat regulation itself. Caliber's motion to dismiss Plaintiffs' second claim for relief referencing WAC 296-62-09547 should therefore be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny Caliber's Second Motion to Dismiss in its entirety. Plaintiffs' meal period claims (Claim 3) are not preempted under Section 301 of the LMRA, as RCW 49.12.187's construction worker exemption does not apply to supersede Plaintiffs' statutory rights (since the CBA does not specifically require rest breaks). Plaintiffs' separate claims for unpaid wages for off-the-clock work, overtime, and willful withholding (Claims 1, 4, and 5) do not derive from their meal period claims, but instead vindicate non-negotiable state law rights that are neither created by nor substantially dependent upon the CBA under the *Burnside* framework. And Plaintiffs' rest break claims (Claim 2) seek no freestanding remedy under WAC 296-62-09547; they reference that regulation only as a basis for when Plaintiffs were entitled to be paid, with the remedy supplied by Washington's industrial insurance and remedial wage statutes. Finally, because Caliber's Motion fails to address or move against Plaintiff Payne's statutory retaliation claim (Claim 6), that claim must also survive.

/ /

/ /

/ /

/ /



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

DATED this 23rd day of November 2026. **BIBIYAN LAW GROUP, P.C.**

By: */s/ Cassandra W. Lenning*

Cassandra W. Lenning, WSBA No. 54336
Danielle E. Kim, WSBA No. 54154
Adarsh N. Parthasarathy, WSBA No. 62319
Alexis E. Hanson, WSBA No. 64041
**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043
Fax: (206) 225-2067
*clenning@tomorrowlaw.com*
*dkim@tomorrowlaw.com*
*aparthasarathy@tomorrowlaw.com*
*ahanson@tomorrowlaw.com*

*Attorneys for Plaintiffs*

I certify that this memorandum contains 5,766 words in compliance with the Local Civil Rules.