THE HONORABLE DAVID G. ESTUDILLO

**UNITED STATES DISTRICT COURT**
**IN AND FOR THE WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| GERARDO BAEZ GARCIA, LUKE LOPEZ, and ROWDY PAYNE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CALIBER CONCRETE CONSTRUCTION, INC., a Washington Corporation in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 3:26-cv-06146-DGE<br><br>**DECLARATION OF LUKE LOPEZ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

I, Luke Lopez, declare as follows:

1. I am a resident of Washington State, over the age of eighteen, and competent to testify to the matters set forth herein.

2. I am a Plaintiff in this matter, have personal knowledge of the facts described below, and make this declaration based upon my personal knowledge.

3. At all relevant times herein, I was a member of the Local 528 Cement Masons & Plasterers Union.

4. I began working for Caliber Concrete Construction, Inc. ("Caliber") on or around August 2023, and last worked for Caliber in May 2025.



**BIBIYAN LAW GROUP, P.C.**
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

5. I worked an average of five (5) days per week during the off-season winter months and up to six (6) days per week during the peak season summer months.

**A. I Was Not Compensated for Pre-Shift and Post-Shift Off-the-Clock Work.**

6. Throughout my tenure at Caliber, my daily scheduled shift was recorded by the foremen as starting at 7:00 a.m. and concluding at 3:00 p.m.

7. However, from my first day of employment, Caliber Operational Manager Rob Reeves ("Mr. Reeves") and the foremen instructed the other crew members and I to arrive at Caliber's central shop well before our scheduled start time—typically between 4:30 a.m. and 5:30 a.m. every morning.

8. During this mandatory pre-shift period (often lasting 1.5 to 2 hours), Mr. Reeves and the foremen directed us to perform manual labor, including cleaning out company trucks, organizing and loading steel concrete forms, inspecting tools, and preparing materials for the day's pour. I was never compensated for this time.

9. Similarly, although the foreman recorded my shift as ending at 3:00 p.m., I was still required to drive the company truck back to Caliber's main shop after finishing at my assigned job site.

10. Once back at the main shop, I had to unload equipment, return company keys, and sign out for the day. From what I recall, I typically did not leave Caliber's shop until 5:00 or 6:00 p.m.

11. This post-shift work regularly added at least one additional hour to my workdays.

12. Accounting for the total hours of pre-shift and post-shift work I completed each day, I estimate that I performed between seven (7) to ten (10) hours of uncompensated, off-the-clock work each week.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

**B. I Rarely Received Overtime.**

13. Despite working between forty-five (45) and forty-eight (48) hours each week, I was rarely paid overtime.

14. On the rare occasion that I was paid overtime, Caliber only did so for those hours in which I worked past 3:00 p.m., without accounting for the work I did each morning.

**C. I Was Not Provided Rest Periods.**

15. Caliber routinely forced me and other crew members to work shifts of four, six, or eight or more consecutive hours without receiving a single uninterrupted ten-minute rest break.

16. Various foremen repeatedly told me and other crew members that rest breaks were not permitted because the concrete was perishable and "would harden and ruin the pour" if left unattended.

17. During the summer months, we regularly poured and finished concrete in direct sun and temperatures exceeding 90 to 100 degrees Fahrenheit.

18. During my first month of employment with Caliber in August 2023, I began feeling ill due to working in extreme heat conditions.

19. Despite informing the foreman that I did not feel well and needed to take a moment to cool down, I was denied a rest break.

20. To avoid passing out on the job site, I walked off to try to cool down.

21. Upon my return, the foreman screamed at and reprimanded me for attempting to take a break.

22. Caliber did not provide rest areas, shade structures, or seating at job sites.

23. I was never paid for the rest breaks Caliber denied me.



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043

**D. I Was Not Provided Meal Periods.**

24. Just as with rest breaks, the foremen repeatedly emphasized that me and crew members were not permitted to take lunches while concrete was curing.

25. As a result, I was forced to either skip lunch entirely or attempt to take quick bites of food while actively operating finishing equipment.

26. I was never compensated for the meal breaks Caliber denied me.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed this 18th day of November, 2026, at Grayland, Washington.

Luke Lopez
Luke Lopez



BIBIYAN LAW GROUP, P.C.
COLUMBIA CENTER
701 5th Ave., 42nd Floor
Seattle, WA 98104
Telephone: (206) 225-2043